[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the Court by Summons and Complaint dated September 25, 1997 and returnable October 21, 197 claiming a dissolution of the marital union, alimony, an allowance to prosecute and a property settlement under the provisions of Connecticut General Statutes (C.G.S). § 46b-81.
Automatic orders accompanied the complaint.
Service of process was made on the Defendant pursuant to an order of notice in Chiefland, Florida.
On October 20, 1997 the Defendant appeared by counsel.
A stipulation between the parties pertaining to financial matters was approved by the Court, Solomon, J., on December 15, 1997.
On June 15, 1998 the Court, Parker, J., modified certain pendente lite orders.
On February 23, 1999 the Plaintiff and the Defendant, with their respective counsel, appeared before the Court and were heard.
The Court makes the following findings of fact.
The Plaintiff, whose maiden name was Ida E. Merchant, and the Defendant were united in marriage on December 22, 1983 at Webster, Massachusetts.
There are no children issue of this union.
The Plaintiff has resided in this State for more than one year prior to the bringing of the complaint.
The parties are not the recipients of public assistance or welfare.
The marriage has broken down irretrievably with no reasonable prospect of reconciliation.
The Plaintiff is age 51 and resides at 596 Lantern Hill Road, Ledyard, which is a one level, single-family residence situated on leased land. CT Page 2936
The yearly lease payments are $2,500.00 and the lease expires in the year 2000.
The annual payment for 1999 has not been made.
The Plaintiff resides alone with only her pet dog.
The Plaintiff is a licensed and certified nursing associate.
Plaintiff secured her G.E.D. in 1981.
Plaintiff is also a licensed hairdresser and cosmetologist since 1990. Plaintiff is also licensed in Maine.
Plaintiff is presently working as a home health aide.
Plaintiff has some back problems that prevent heavy lifting of patients.
In 1994 the Plaintiff started taking courses at Three Rivers College looking toward a degree in nursing.
The Plaintiff suffers from Krohns Disease and has undergone surgery incident thereto in 1997.
The Krohns Disease medical problems have prevented the Plaintiff from completing the educational requirements at Three Rivers College.
Plaintiff's surgery for Krohns Disease was done at the Lahey Clinic in Massachusetts.
The Defendant had urged the Plaintiff to have the surgery done at the Lahey Clinic even though all medical charges would not be covered under their insurance plan presumably in recognition of its prestigious reputation.
The Plaintiff presently feels good.
The Plaintiff is presently employed by Optimum Home Health and has been since February 1998.
Plaintiff's hourly rate is $9.00 and her average work week is 40 hours. CT Page 2937
Overtime is not always available.
The parties have been separated since June 1997 when the Defendant went to Chiefland, Florida to reside there in a mobile home.
The Plaintiff presently has a friend, one Michael McCue.
This relationship began seven months after June 1997.
Mr. McCue took the Plaintiff to the Lahey Clinic.
It is the Plaintiff's claim that the Defendant had $53,117.00 in a savings account at Dime Savings Bank in June 1996 and that no satisfactory accounting of said funds has been made.
Although material purporting to relate to Plaintiff's claim as to this account was included in the standing order compliance, none of the documents were offered as exhibits or marked as such and no stipulation by counsel was made known to the Court.
It is the Plaintiff's hope to remain at the Lantern Hill residence.
The real estate shown on the Plaintiff's financial affidavit located in Baileyville, Maine, 14 acres, came to her incident to a divorce settlement pertaining to her first marriage.
During a portion of the marriage, the Plaintiff's son Darrin, and daughter April, issue of her first marriage, lived with the parties until July 1986 when they returned to Maine.
The Lantern Hill property was acquired in January 1990 for $17,000.00 and initially was uninhabitable, but both parties put their paychecks into fixing it up and making improvements.
The Plaintiff suggests that the Defendant has a friend, one Rhonda Garcia, in Florida.
In times past, the parties had lived on a houseboat.
The Defendant retired in 1996.
The Defendant has a substantial hearing loss and has a CT Page 2938 hearing aid in each ear.
The Defendant had two children issue of a prior marriage to his first wife Norma, both children being lost in accidents.
The Defendant contends that he financially helped and assisted the Plaintiff's children and provided "everything" for them.
The Defendant is age 74, he has a hernia and prostate problems, the full extent of which are not yet known.
The Defendant retired from Electric Boat and receives a pension from them as well as Social Security and a modest amount from the Engineer's Union.
The Defendant represents his hearing loss is 40%, he was required to sit close to the witness while in Court in order to hear and was required on several occasions to leave the court briefly due to his prostate problems.
The Defendant claims that he has invested at least $22,000.00 into the Lantern Hill property.
The Defendant represents that the insurance on the premises is current but that he has not made the required $2,500.00 annual leasehold payment that was due January 1, 1999.
The title to the Lantern Hill property (rights under the lease) is in the Defendant's name.
There has not been any physical relationship between the parties for at least six years.
The Defendant's continued residency in Florida is due to health conditions.
Incident to the causes of Defendant's hearing loss, he received a settlement of $24,000.00 some time ago. The Defendant also received funds in the past relative to the loss of his two children in accidents, but the amount was not disclosed.
From the financial affidavit of the Plaintiff the Court finds: CT Page 2939
Plaintiff's weekly gross pay is $469.42, less deductions of $75.67, for a net of $393.75.
Plaintiff has been receiving $115.00 weekly as alimony pendente lite.
Plaintiff's weekly expenses are $378.31.
Plaintiff's debts amount to $10,982.17 including counsel fees.
Plaintiff values the Lantern Hill property at $17,500.00 (the 1990 purchase price) and indicates it is free and clear.
It is to be noted, however, that this is supposedly the value of the residence only, as title to the land is in the name of the lessor of the premises.
Plaintiff values 14 acres in Baileyville, Maine, allegedly in her name, at $12,700.00.
Plaintiff shows a parcel of six acres of land in Putnam, Connecticut valued at $4,270.00 on her affidavit, but there is no exhibit or testimony indicating her source of title.
Plaintiff's financial affidavit reflects two motor vehicles, a 1987 GMC Jimmy for which no value is shown. Testimony indicates this vehicle is in her name.
The other vehicle a 1987 Chevrolet Pickup on her affidavit, the testimony discloses is in Defendant's name.
Plaintiff shows other personal property, which the testimony and agreement of the parties shows, is in the Defendant's name as valued at $30,500.00.
Plaintiff's affidavit shows an A.G. Edwards account valued at $25,000.00. This account is actually in the Defendant's name and he values it at $18,785.00.
Plaintiff also shows land and a mobile home in Chiefland Florida valued at $8,950.00, land in Interlocken, Florida valued at $1,650.00 and a building lot in Peru, Maine valued at $2,500.00, although as best the Court can devine, these parcels are all in the Defendant's name. CT Page 2940
The Defendant's financial affidavit reflects income from pensions and Social Security in the amount of $656.36 weekly, claimed weekly expenses of $772.43.
The Defendant shows $4,741.00 in debt.
The Defendant values the Lantern Hill residence at $41,500.00 free and clear.
Putnam premises, six acres at $4,270.00, although he shows the Baileyville, Maine property that is in the Plaintiff's name.
Personal property including two motor vehicles, only one of which is in his name, are overvalued in the Court's opinion.
1987 GMC Jimmy $9,000.00
1987 Chevrolet Pickup $4,000.00
The Defendant values an old wooden lobster boat, a backhoe and woodmizer at $23,000.00, although the condition thereof is suspect, the same having been out in the elements for years.
The Defendant shows approximately $2,335.00 in the bank, including the amount of $625.35 remaining in the Dime Savings account.
The Defendant values his A.G. Edwards account at $18,785.00.
The Defendant values the Chiefland, Florida land with mobile home at $8,950.00, the Interlocken, Florida land at $1,650.00, and the Peru, Maine building lot at $220.00.
There was only one exhibit offered and marked in these proceedings, Plaintiff's exhibit 1 reflecting a balance due to the Lahey Clinic of $3,875.49 for the Krohns Disease surgery performed on the Plaintiff.
Admittedly, the Plaintiff, by her counsel, presumably complied with the standing orders as to proposed exhibits, but the documents were never offered during the proceedings and were never marked as exhibits.
Query as to the propriety of the Court considering the same CT Page 2941 which included tax returns and copy of one deed?
The Court is also hampered by the fact that no testimony was offered by a realtor nor were written copies of appraisals submitted as exhibits as to the values of the properties.
The Court is also hampered by virtue of the lack of any medical testimony or written reports concerning the Plaintiff's medical condition or the Defendant's hearing loss and his herniated condition and prostate diagnosis.
 Discussion
This is a marriage of 15-1/2 years.
This is the second marital union for each party according to the testimony. The Court notes that no health form was filed.
There were no children issue of this union.
There does not appear to be any specific reason for the marital breakdown other than the Plaintiff's disinclination to live in Florida.
The future looks very bleak for both parties, the Plaintiff with Krohns Disease and the Defendant with his prostate condition.
 The Law
The Court has considered all of the statutes which apply in matters of this nature which include without limitations C.G.S. § 46b-62 regarding attorney's fees and C.G.S. § 46b-82
regarding alimony.
The Court has considered all of the applicable case law that govern the matter.
The Court has considered the testimony of the parties, their candor or lack thereof and all exhibits and the arguments of counsel.
In considering the issue of alimony, the Court has considered the length of the marriage, the cause of the dissolution, the age, health, station, occupation, employability, estate and needs CT Page 2942 of the parties.
The Court has considered the standards of living of the parties.
The Court enters the following orders.
The Plaintiff shall have and retain all of the right, title and interest in and to the home situated on the leased real estate (land) known as 596 Lantern Hill Road in Ledyard and the Defendant shall execute documents necessary to achieve a proper assignment of said lease.
The Defendant shall pay within 30 days the required $2,500.00 annual lease payment which was due January 1, 1999.
The Plaintiff may retain as her sole and separate property the real estate acquired from her first spouse to wit, the 14 acre parcel situated in Baileyville, Maine.
The Defendant may have and retain all the right, title and interest in and to the Chiefland, Florida parcel with mobile home thereon, in the event that the Plaintiff holds any record interest therein, she shall execute whatever instrument may be necessary to establish sole title in the Defendant.
The Defendant may have and retain the Interlocken, Florida parcel valued at $1,650.00 and the Peru, Maine building lot valued at $220.00.
Plaintiff shall execute any document if necessary to effect this order.
The Defendant may retain and have the six acre parcel of land valued at $4,270.00 situated in Putnam.
Plaintiff shall execute any document, if necessary, to effect this order.
The Plaintiff may retain the 1987 GMC Jimmy motor vehicle and the Defendant may retain the 1987 Chevrolet pickup motor vehicle.
The Defendant may retain his Charter Oak Federal Credit Union account of $106.59, his Drummond Community Bank account of $1,603.61 and the balance in his Dime Savings account of $625.35. CT Page 2943
The Plaintiff may have 1/2, one half, of the A.G. Edwards stock account; to wit, 1/2 of $18,785.00.
Note: the Court was not provided with any exhibit verifying the status or value of the A.G. Edwards account other than the values shown on the respective financial affidavits.
The Plaintiff shall be entitled to 25% of the Defendant's pensions from Electric Boat and the Engineer's Union, mindful of the length of the marriage, in contrast to the length of employed service of the Defendant.
Defendant's Social Security payments are not affected by this order.
The Defendant shall pay 1/2, one-half, of the outstanding Lahey Clinic statement; to wit, 1/2 of $3,875.49 within 90 days.
Any IRS income tax refund payments being held by counsel or the parties for the years 1996 and 1997 are to be equally divided, one-half to each.
The Defendant to pay the Plaintiff the sum of $1.00 per year alimony for four years, nonmodifiable as to term, to terminate earlier on the Plaintiff's death or remarriage or cohabitation with a non-related male over the age of 18.
The Plaintiff shall have the 16 foot Old Town Canoe, shown as item 10 on the attached Schedule A, and one lawn edger (bushbeater), shown as item 14 on the attached Schedule A.
All of the other items on said lengthy list, by the express agreement of the parties, are to be the sole and separate property of the Defendant.
Many of the items on said list, according to the testimony of the parties, have been out in the weather for years and may be of questionable value.
The Defendant shall have until September 1, 1999 to effect the removal of said goods, machinery and equipment mindful of the logistical problems for moving heavy objects.
The Defendant shall give the Plaintiff at least 15 days CT Page 2944 notice of any removal of items date and peacefully effect said removal.
In the event that the items shown on said list are not removed by September 1, 1999, they shall then become the property of the Plaintiff.
The Plaintiff may retain the present furnishings and contents of the home in which she presently resides at Lantern Hill Road except as may be modified by the items shown on Schedule A.
Each party to be responsible for the debts shown on their respective financial affidavits mindful of the prior order as to the Lahey Clinic statement.
Each party to be responsible for their own attorney's fees.
There was no request made to the Court for resumption of prior or maiden name as to the Plaintiff.
If available, the Plaintiff may have medical coverage incident to the Defendant's former employment for 36 months, but at her own cost and expense.
The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried C.G.S. § 46b-40c.
Austin, JTR
 SCHEDULE A Personeal Property Located at home 596 Lantern hill Rd Ledyard Ct, 06339
1. 540 Case backhoe (Trixey)
2. Jhon Deere Bucket Loader 40 series
3. Woodmizer sawmill portable
4. All sharpening Filing Tools, all saws and related equitment
5. Wood spliter on rubber portable CT Page 2945
6. 30 ftLobster boat with internal desiel engine
7. 1978 CJ7 Jeep
8. 3 home made trailors
9. 16 ft sea skiff with 50 ft outboard motor
10. 16 ft old town canoe
11. Sears yard chipper
12. 10 chian saws
13. yard tools
14. 2 lawn edgers
15. 2 lawn mowers
16. 1 out board motor
 Tools in the green house
1. lawn blower
2. Bench saws, wrenches, bolt and nut accessories for all my machinery
3. chain binders
4. out board motor
5. motor parts
6. chains ropes cables chain falls Things to much list
 Inside the home
Fire arms to be handed down to his son Roland
Personel papers etc.
 Misc. CT Page 2946
1. Test equitment for gas and desiel engines
2. Battery chargers
3. water pumps
4. generators
5. 2,000 feet of three inch rope
6. 6, compressers
 Contents in the shop way to much to list
Lumber plywood saw post tralior wheels, diesel generators set
2 big welding machines
1 sleeper cab